UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEFFREY MCLEICHY,

        Plaintiff,

v.                                                                    Case No. 1:09-cv-857
                                                                      Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on September 2, 1961 (AR 93).[1]  Plaintiff testified that he completed the 9th grade (AR 27).[2]  He alleged a disability onset date of October 1, 2005 (AR 93). Plaintiff had previous employment as a forklift driver, laborer, parking attendant, restaurant worker and temporary worker (AR 110).  Plaintiff identified his disabling conditions as: depression, decreased vision in left eye, and high blood pressure (AR 109).  Plaintiff described his limitations as follows:

> I do not know how to spell that good or write well.  I cannot see that well
> from my left eye, I am always turning my head so that I can see to the left and I am
> very depressed and unable to function.  I take medication that does help me a bit.  I
> also get migraine headaches.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that plaintiff's disability report states that he completed the 11th grade (AR 113).

(AR 109). Plaintiff reported that he last worked on October 1, 2005, when he was fired from his last

job (AR 109). On April 20, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim

*de novo* and entered a decision denying benefits (AR 13-20). This decision, which was later

approved by the Appeals Council, has become the final decision of the Commissioner and is now

before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on

determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*,

25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based

upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th

Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court

does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that

the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must

stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, ALJ Jones found that plaintiff has not engaged in substantial gainful activity since his SSI application date of August 23, 2006 (AR 15). At step two, the ALJ found that plaintiff suffered from severe impairments of: hypertension; loss of visual acuity in left eye; cognitive disorder; and a history of substance abuse (AR 15). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 15). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 416.967(b) except he may occasionally climb and balance; and frequently stoop, kneel, crawl and crouch." (AR 27). The ALJ further found that plaintiff's past relevant work as a parking lot attendant did not require the performance of work-related activities precluded by his RFC (AR 19). Because plaintiff retained the RFC to perform his past relevant work as it is actually performed, the ALJ determined that plaintiff was not disabled at the fourth step of the sequential evaluation process (AR 19).

4

After making this determination, the ALJ nevertheless proceeded to the fifth step, where he found that with his RFC, plaintiff could perform a number of light, unskilled jobs in Michigan, including: cashier (26,000 jobs); hand assembler (8,600 jobs); and hand packer (11,000 jobs) (AR 19). The ALJ further found that, according to the testimony of the vocational expert (VE) in response to a hypothetical question, there were a total of 360,000 light, unskilled jobs and 240,000 sedentary, unskilled jobs "that would accommodate the restrictions in the hypothetical" (AR 19).

Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act (AR 19-20).

### III. ANALYSIS

Contrary to the explicit instructions set forth in the court's order directing filing of briefs, plaintiff filed a motion for summary judgment in this action. *See* docket nos. 6 and 7.[3] The court will view this motion and supporting brief as his brief in support of his complaint. Plaintiff has set forth three related theories in his statement of errors which the court summarizes as follows:

> **A.      The ALJ erred in failing to find plaintiff disabled under Listing 12.05C, even though plaintiff has an IQ under 70 and an additional serious impairment.**
>
> **B.      The ALJ failed to consider that the lack of a diagnosis of mental retardation by the evaluating psychologist was made because of his inability to review prior records which the ALJ had, but did not review or mention in the decision denying benefits.  These records demonstrate a severe mental impairment existed since plaintiff's childhood.**

---

[3]      The order directing filing of briefs provides that "[m]otions for summary judgment are inappropriate in social security cases and **shall not** be filed."  Order (docket no. 6) (emphasis in original).

**C.** **The ALJ failed to consider the opinions of evaluating professionals that plaintiff was functioning at a level below that required for substantial gainful activity.**

The gist of plaintiff's claim is that he is disabled under the listing of mental retardation, 12.05C. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").

The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Consequently, when a claimant successfully demonstrates that he meets a listed

impairment, the Commissioner will find the claimant disabled without considering his age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05C which provides in pertinent part as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*       *       *

C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05B, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, the ALJ acknowledged that plaintiff had IQ scores between 60 and 70, i.e., a verbal score of 64, a performance score of 65 and a full scale score of 62 (AR 17). The ALJ also found that plaintiff suffered from an additional severe impairment of loss of visual acuity in the left eye (AR 15). These limitations would meet the requirements of Listing 12.05C. However, the ALJ rejected the 12.05C claim because "the medical records indicate that the claimant clearly does not show any limitations prior to age 22" (AR 15).

In support of his claim, plaintiff asserts that he did not pass any school subject after the tenth grade (AR 208-15). Plaintiff contends that the school history is significant because the consultative examiner who performed the IQ test on January 25, 2006, Neal Davidson, Ph.D., stated that he was unable to diagnose plaintiff's retardation without these records. Dr. Davidson made the following observations regarding "Validity" of the IQ test which are relevant to this issue:

Jeffrey denies that he has taken an intelligence test within the past year.

Jeffrey receives a Full Scale IQ of 62 that places him at the 1st percentile and in the "Extremely Low" range. There is a 95% confidence interval that his true score lies between 59 and 67. Jeffrey receives a Verbal IQ of 64 that places him at the 1st percentile and in the "Extremely Low" range. Jeffrey receives a Performance IQ of 65 that places him at the 1st percentile and in the "Extremely Low" range.

Jeffrey's presentation is consistent with the Disability records from October, 2005. However, in those records, he denies having a problem with alcohol.

Due to Jeffrey's vision problems, his true scores may be slightly higher than the current scores. Still, these scores appear to be a valid indicator of his overall cognitive functioning.

Mental retardation cannot be diagnosed due to the lack of records from the developmental period.

(AR 166-67).

In a subsequent evaluation from October 2006, which did not involve IQ testing, Dr. Davidson found that plaintiff was inconsistent and not wholly credible (AR 185). Examples of plaintiff's questionable claims included: that he slept all day (and has always done this); that he ate only cold cereal with milk; that he never went to the store (despite having previously told the examiner that he ran into his daughter in a store); and that he was generally confused (AR 183-84).

The record reflects that plaintiff's counsel faxed his school records to the agency's Fort Wayne Hearing Office on December 11, 2008, nearly three months before the administrative hearing (AR 207-15). The ALJ acknowledged receiving the records (AR 25), but did not mention the records in his decision. Defendant's brief does not address the issue raised by Dr. Davidson. Rather, in response to plaintiff's claim, defendant asserts that plaintiff's failing grades in 11th and 12th grade did not indicate "that his poor performance was in any way related to intellectual

functioning problems" and that "even if these academic records were before the consultative examiners, they would not likely have affected those opinions." Defendant's Brief at p. 11. The court disagrees. Plaintiff's academic records are critical to establishing plaintiff's claim under Listing 12.05C. Dr. Davidson could not make a determination regarding mental retardation for want of these records from plaintiff's developmental period. Having received the records, the ALJ cannot speak for Dr. Davidson and render a medical opinion that those records either prove or disprove mental retardation. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record"). Similarly, this court can neither weigh the evidence nor perform a *de novo* review regarding whether plaintiff met the mental retardation requirement. *See Brainard*, 889 F.2d at 681.

Whether the academic records establish mental retardation is an issue that must be addressed by Dr. Davidson or another consultative examiner. If Dr. Davidson or another consultative examiner determines that plaintiff's academic records proved the onset of mental retardation before age 22, then plaintiff has met the requirements of Listing 12.05C because he has an IQ score between 60 and 70 and "a physical . . . impairment imposing an additional and significant work-related limitation of function" (loss of visual acuity in his left eye). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), to enable Dr. Davidson or another consultative examiner to determine whether plaintiff meets the mental retardation requirement of Listing 12.05C.

## IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Dated:  August 4, 2010                                          /s/ Hugh W. Brenneman, Jr.
                                                                HUGH W. BRENNEMAN, JR.
                                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).